**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Andre Redmond | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 3611 |
| vs. | ) | |
| | ) | |
| Daniel Goosherst et. al., | ) | Honorable Judge Der-Yeghiayan |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR JUDGMENT AS MATTER OF LAW, OR IN THE**
**ALTERNATIVE A NEW TRIAL, OR IN THE ALTERNATIVE VACATE**
**COMPENSATORY AND PUNITIVE DAMAGE AWARD,**
**OR IN THE ALTERNATIVE ENTER A REMITTUR**

Defendants, Daniel Goosherst, Louis Szubert, and Jeffrey Chevalier, by one of their

attorneys, Avi T. Kamionski move this Honorable Court for Judgment as a Matter of Law

pursuant to Fed.R.Civ.P. 50(b), and in the alternative move this Court for a New Trial pursuant to

Fed.R.Civ.P. 59(a), and further move to vacate the judgment for compensatory and punitive

damages, or in the alternative for remittur of compensatory and punitive damages. In support

thereof, defendants state as follows:

**INTRODUCTION**

On March 4, 2008, at 8:30 P.M., the Jury returned a verdict in favor of plaintiff on his

false arrest claim against all defendants and his excessive force claim against defendant Daniel

Goosherst. The Jury awarded plaintiff $7,500.00 in compensatory damages and $33,000.00 in

punitive damages. The punitive award was broken down as follows: Daniel Goosherst -

$20,000.00, Jeffrey Chevalier - $8,000.00, and Louis Szubert - $5,000.00. This Court entered the

judgment on March 4, 2008.

## OVERVIEW OF THE EVIDENCE PRESENTED AT TRIAL[1]

Plaintiff claimed that on the evening of May 8, 2005, he was outside of 8813 S. Buffalo with his cousin Tamario Redmond. Plaintiff unequivocally stated he was not drinking a beer, did not drink any beers that night and when he consumed alcohol, he would only have a "swallow." Plaintiff testified that the defendants pulled up their car and began to search both him and his cousin. He claimed he was slammed onto the police car and that an officer searched his car. Plaintiff claimed he was then falsely arrested by the defendants. The only person who supported plaintiff's story was the plaintiff. Plaintiff did not present any eyewitness testimony, although he claimed there were numerous eyewitnesses to his arrest. Plaintiff testified he never claimed he was in pain and did not present any physical evidence of injury. The lockup keeper also testified that plaintiff did not appear to be in any obvious pain or injury. Plaintiff never presented any medical records, photograph, or any documentation whatsoever of being physically harmed by the alleged excessive force.

Moreover, plaintiff lied from the stand. Besides the countless impeachments from his deposition, plaintiff clearly lied about calling in to work and telling his supervisor he could not come to work because he was intoxicated. Plaintiff's supervisor, an independent witnesses, testified plaintiff called him and told him he could not come to work because he was intoxicated. Plaintiff lied about making that phone call. In fact, realizing that denying he ever drinks was also a lie, plaintiff changed his deposition testimony on the stand. Plaintiff explained that when he stated that he said "a swallow," he meant that he drank a full beer. He also admitted that he

---

[1] Defendants have just ordered transcripts related to testimony of defendants Goosherst and Chevalier, but have not yet received them. Additionally, defendants have just ordered transcripts of Plaintiff counsel's closing argument.

drinks occasionally. His lies were further confirmed by his mother and sister, who both testified that he drinks occasionally. Moreover, his mother could not recall if he was drinking that night at his sister even testified that she never saw him outside. Therefore, she could not testify to whether the plaintiff was drinking when the police stopped him. Lastly, the lockup keeper, testified the he observed that the plaintiff was under the influence of alcohol when he interviewed him in lockup. None of this evidence was discredited or called into question by any witness.

Besides presenting no evidence of physical damages, plaintiff's "emotional damages" were strictly limited to his feelings of being "violated." Plaintiff himself did not even testify of any severe emotional feelings that he has suffered as a direct result of this arrest, or for any alleged excessive force. Plaintiff had been arrested five times prior to and three times after this arrest and gave no explanation why this particular arrest was any different. In fact, even his own mother and sister offered no support for his so called "emotional damages." These witness were portrayed as having a close relationship with the plaintiff, yet neither testified as to what extent this arrest affected plaintiff, if at all.

The Jury returned a verdict in plaintiff's favor on the excessive fore claim against Daniel Gossherst and false arrest claim against all defendants, but rejected plaintiff's claim that his car was unlawfully searched.

## ARGUMENT

## I.      PUNITIVE DAMAGES VERDICT SHOULD BE VACATED.

### A.      MANIFEST WEIGHT OF THE EVIDENCE INSUFFICIENT TO SUPPORT THE PUNITIVE DAMAGES AWARDS AGAINST DEFENDANTS.

A court has a mandatory duty to correct an unconstitutionally excessive verdict so that it

conforms to the requirements of the Due Process Clause.  <u>BMW of North America v. Gore</u>, 517 U.S. 559, 585, 116 S. Ct. 1589 (1996).  The Due Process Clause prohibits a state from imposing a "grossly excessive" punishment.  <u>TXO Production Corp v. Alliance Resources Corp.</u>, 509 U.S. 443, 454, 113 S. Ct. 2711 (1993).  In fact, "Trial judges may vacate a jury's verdict if they determine that the award was 'monstrously excessive' or that the award has no rational connection to the evidence." *Holmes v. Elgin, Joliet & Eastern Ry. Co.*, 18 F.3d 1393, 1395 (7th Cir.1994).

The court, not the jury, has the responsibility for determining this constitutional limit. <u>Cooper Industries, Inc. v. Leatherman Tool Group</u>, 532 U.S. 424, 437, 121 S. Ct. 1678, 1686 (2001) (review of district court's determination that punitive award is inconsistent with due process does not implicate Seventh Amendment concerns).  Neither the common law nor the Seventh Amendment prohibits reexamination of the verdict for legal error, which federal courts have the obligation and the power to correct the error by vacating or reversing the jury's verdict. <u>Id.</u>  Guided by an independent duty to assess any verdict in light of the evidence presented at trial, this court should set aside the unconstitutionally excessive verdict.

A Court may vacate a jury's verdict if the award is "monstrously excessive," "shocks the judicial conscience," clearly appears "to be the result of passion and prejudice" or has "no rational connection to the evidence." <u>McNabola v. Chicago Transit Auth.</u>, 10 F.3d 501, 516 (7th Cir. 1993); <u>Joan W. v. City of Chicago</u>, 771 F.2d 1020, 1023 (7th Cir. 1985).  The trial judge may set a side a grossly excessive verdict and appellate review is limited to an abuse of discretion because the trial judge has a superior ability to assess its fairness and competence, by virtue of first-hand observation.  <u>Abernathy v. Superior Hardwoods, Inc.</u>, 704 F.2d 963, 972 (7th Cir. 1983).

4

In Coleman v. Seidel, 533 F. Supp. 593 (D. Conn. 1980), plaintiff sought damages under section 1983 when his decedent was shot and killed by an officer. The jury awarded $100,000 compensatory damages and $75,000 in punitive damages. The trial judge vacated the punitive damage award after reviewing all the evidence because it found "no rational basis to support the jury's award." Coleman, 533 F. Supp. at 600. In Montgomery v. Bronski et.al., 99 C 5766, a police misconduct case, Judge Hibler vacated a $1,000.00 ($500 against each defendant) punitive damage award where plaintiff manifest weight of the evidence did not support a punitive damage award. (See Minute Order attached hereto as Exhibit A).

    **a.**    **Defendant Daniel Gooseherst - $20,000**

        1.    <u>No Physical Evidence to Support Any Damages for an Excessive Force Claim Against Defendant Daniel Goosherst</u>

In this case, there is absolutely no rational connection between the jury's verdict against Daniel Goosherst and the evidence presented at trial. Other than plaintiff's one-sentence testimony that he was "slammed" against a car, plaintiff presented no witness testimony or evidence to support that ever occurred. Plaintiff also failed to present any witnesses or physical evidence that he was injured. Plaintiff admitted he suffered no injuries and that he never complained to anyone at any time. He also admitted he never sought medical treatment. Furthermore, the lock-up keeper testified plaintiff did not appear to be injured and never complained of injury.

        2.    <u>Defendant Daniel Goosherst Was Never Even Questioned by Plaintiff's Counsel about the Alleged Excessive Force.</u>

Defendant Goosherst was portrayed by plaintiff's counsel as the "main guy" and the "leader." Most notably, of all the defendants, plaintiff did not call Goosherst in his case in chief.

Additionally, when he testified in the defendants case in chief, upon cross-examination, Goosherst was never questioned by plaintiff about the alleged force or about slamming plaintiff against the car. Other than denying that it occurred on direct examination, plaintiff made no attempt to rebut Goosherst's testimony on cross-examination. Nor did plaintiff present any contrary evidence by any witness. In the end, the majority of what the jury heard about Goosherst's conduct was through plaintiff's counsel in closing argument.

      **b.    Defendant Jeffery Chevalier - $8,000.00**

As a matter of law, punitive damages must be vacated as to Jeffrey Chevalier because plaintiff presented no evidence in his case in chief that Jeffery Chevalier committed any constitutional violations. At no time did plaintiff identify Chevalier as one of the arresting officers or suggest that he used excessive force against him. In fact, after defendant Chevalier moved for directed verdict, plaintiff himself realized he had not established any liability and moved to re-open his case in chief to question him. The Court denied the request, but also denied defendant's motion. Nevertheless, the manifest weight of the evidence did not support awarding punitive damages based on the claims alleged. Again, plaintiff offered no witness testimony or documentary evidence to support any of the claims against Defendant Chevalier.

      **c.    Defendant Louis Szubert - $5,000.00.**

Similarly, there was no evidence presented that defendant Szubert arrested plaintiff. The Jury also acquitted defendant Szubert of searching plaintiff's car. As stated above, the manifest weight of the evidence did not support awarding punitive damages based on the claims alleged. Simply, there were no witnesses or documentary evidence presented, which would have supported any of the claims against defendant Szubert.

In summary, this verdict has no rational connection to the properly admitted evidence at trial and therefore must be set aside.

**B.      JURY'S PUNITIVE DAMAGES VERDICT REFLECTS BIAS, PASSION, OR PREJUDICE AND SHOULD BE VACATED**

When a punitive damages award reflects bias, passion, or prejudice on the part of the jury, the Constitution has been violated, no matter what the size of the award.  TXO, 509 U.S. at 467, 113 S. Ct. at 2725.  It violates the Constitution because of the fundamental guarantee that an individual "may rest secure against arbitrary or irrational deprivations of property."  Id.  Certainly, the size of the award is an indication that the verdict resulted from bias, passion, or prejudice.  Id.  Our Supreme Court has expressed grave concern that punitive damage verdicts have "run wild," and that large punitive damage verdicts are inexplicable on any basis but caprice or passion. Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 9-12, 11 S. Ct. 1032, 1038-40 (1991).  When reviewing such verdicts in relation to the evidence, the "extreme amount of an award compared to the actual damage inflicted can be evidence" of bias or prejudice.  Haslip, 499 U.S. at 41, 111 S. Ct. at 1055.

Here, plaintiff did not present any physical evidence that he suffered any actual damage. He offered no photographs, medical evidence, or even any witnesses to support his claims.  In fact, the main eye witness, Tamario Redmond, plaintiff's cousin, who allegedly witnessed this incident, did not even testify in this case.

In light of the lack of evidence to support any punitive damages verdict, the only explanation for the verdict are the multiple improper arguments made by plaintiff's counsel, clearly intended to inflame the jury, inter alia:

1. Plaintiff's counsel repeatedly told the jury this is what the "Chicago Police Department Officers do."

2. Seeking jury nullification of this Court's Jury Instructions when he argued that even if his client was drinking he should not have been arrested. The evidence presented was that drinking on the public way is a crime and that even though it may be minor, or even though plaintiff could have been issued a citation, defendants had probable cause to make a full custodial arrest. Plaintiff's argument encouraged the jury to disregard this law when he argued that in Wrigleyville after a Cub game, you would get "a pass", but on the South side of Chicago, people get arrested.

3. Plaintiff improperly argued that "these officers" (white males) arresting "this plaintiff" (African American Male) on South side (African American Community) vs. Wrigleyville (white community).

4. Plaintiff made reference to bar fights, clearly alluding to the Anthony Abbate, Jefferson Tap, and other SOS officer incidents at bars. These are widley known instances of alleged police misconduct and were precluded by a motion in limine.

5. Plaintiff never established any of the officers lied and instead resorted to improper argument when he called their testimony "Testlying." Testlying is a clear reference to a general perception that police officers lie at trial. *(See* Testilying: Police Perjury and What to Do About,.67 U. Colo. L. Rev. 1037 (Fall 2006)).

6. Plaintiff counsel's fishing expedition argument was completely unsupported by any evidence and was improper, thereby giving the impression that "these officers"

(white males) arresting "this plaintiff" (African American Male) on South side

(African American Community) vs. Wrigleyville (White community).

7.     Plaintiff's counsel argued to the Jury that verbal abuse, including the alleged use of

the "n-word" and the invocation of Jesse Jackson's name warranted damages

simply to invoke bias, prejudice and/or sympathy from the Jury.

All of these improper arguments, made during the course of the trial, could not be cured

by any instruction and resulted in a verdict that was the result of bias, passion and prejudice.

Such a verdict, returned by bias or prejudice, undoubtedly violates due process.  Haslip, 499 U.S.

at 41, 111 S. Ct. at 1055.-

**C.**     **BASED ON THE EVIDENCE PRESENTED AT TRIAL, THE PUNITIVE DAMAGES VERDICT SHOWS THAT THE JURY WAS MOTIVATED BY PASSION AND PREJUDICE.**

A punitive damage must be supported by the record and may not constitute a windfall to

the prevailing party; if it is merely a windfall, it may be reversed.  Allahar v. Zahora, 59 F.3d 693

(7th Cir. 1995).   In Allahar,  Judge Kocoras, who presided over the trial, heard evidence of racial

epithets being used by the defendant in that section 1981 and 1982 civil rights claim.  Defendant

had signed a contract for the sale of a home to the plaintiff and later reneged, stating the

neighbors did not want him to sell to any "niggers on the block."

Considering that the plaintiff suffered few out-of-pocket costs, and had received $10,000

in compensatory damages for their emotional injuries, Judge Kocoras set aside the $7,500

punitive damages award because it constituted "a significant windfall" for the plaintiffs.  Id.  On

review, the Seventh Circuit noted that the district court has "considerable discretion" in deciding

when punitive damages should be set aside.  Id.

In this case, plaintiff offered no evidence of any out-of-pocket costs whatsoever. He had

no medical costs or lost time from work. He had no evidence to support any emotional injury.

Nor did he distinguish the effect he suffered as a result of this arrest from any other arrest. He

had no evidence to support his being slammed on the car. Indeed, the one witness who allegedly

observed the alleged force did not testify. For such evidence, plaintiff is surely not entitled to

$33,000.00 dollars in punitive damages. In fact, he is entitled to nothing. This is a case in which

plaintiff had no physical or medical evidence to support any claim of injury. Instead, his conduct

and admissions impeached his entire claim. Because the jury was inflamed by improper arguments

and, carried away by passion and prejudice, they returned a nonsensical verdict. If $7,500.00 is a

"significant" windfall in a civil rights case with shameful epithets and few out-of-pocket expenses,

surely a $33,000.00 dollars verdict is gargantuan windfall in a case with <u>no</u> out-of-pocket

expenses. Such a verdict must be set aside.

Plaintiff did not establish defendants' conduct was "malicious or in reckless disregard of

Plaintiff's rights." 7th Cir. Pattern Instruction 7.24. In other words, he did not submit any

evidence whatsoever that defendants actions were "accompanied by ill will, spite, or done for the

purpose of injuring Plaintiff." <u>Id</u>. As there was no evidence, plaintiff's counsel's argued to the

jury with the intent of eliciting a verdict based on bias, prejudice and/or sympathy, which the Jury

was specially instructed against. <u>Id</u>.

Finally, if this Court should determine that, despite the lack of supporting evidence, some

punitive damage verdict is warranted, it should, at a minimum, grant a remittitur of the punitive

damages verdict. As the Seventh Circuit has admonished, judges and juries must not be casual

with other people's money. <u>Avita v. Metropolitan Club of Chicago, Inc.</u>, 49 F.3d 1219 (7th Cir.

1995).

## II. THE COMPENSATORY VERDICT, A RESULT OF BIAS, PASSION OR PREJUDICE, IS NOT SUPPORTED BY THE EVIDENCE AND SHOULD BE SET ASIDE, OR, IN THE ALTERNATIVE, THIS COURT SHOULD REDUCE THE AWARD.

The $7,500.00 compensatory damages verdict was not based on any medical or physical evidence. Plaintiff failed to prove that any constitutional violation caused him <u>actual harm</u>, as required by <u>Carey v. Piphus</u>, 435 U.S. 247, 248-251 (1978).

### A. The compensatory damages verdict should be set aside.

This court may vacate the jury's compensatory damages verdict if the award has "no rational connection to the evidence," or clearly appears "to be the result of passion and prejudice." <u>McNabola v. Chicago Transit Auth.</u>, 10 F.3d 501, 516 (7th Cir. 1993); <u>Joan W. v. City of Chicago</u>, 771 F.2d 1020, 1023 (7th Cir. 1985). The compensatory damages verdict is not based on any medical or physical evidence. Nor can it be rationally based on any emotional damages. Lack of objective evidence to establish injury defeats a claim that the defendants used excessive force. <u>McNair v. Coffey</u>, 279 F.3d 463, 484 (7th Cir. 2002). Any verdict in this case clearly has no rational connection to the evidence and was the result of passion and prejudice.

In <u>Nekolny v. Painter</u>, the Seventh Circuit vacated compensatory damage verdicts based on mental and emotional distress because the plaintiff's own statements were not enough to establish injury in the absence of other facts indicating emotional injury. 653 F.2d 1164, 1172-73 (7th Cir. 1981). The evidence consisted of plaintiffs testifying that they were "very depressed," "despondent," "didn't work for six weeks, completely humiliated and stayed close to home." The Seventh Circuit held that such evidence was insufficient to constitute proof of compensable injury

and vacated the award.

In this case, plaintiff presented no witness, other than himself, to even discuss his emotional damages. His own family would not and could not support that claim. Both his mother and sister said nothing about his emotional or physical injuries. Just as in Nekolny, plaintiff's statements here (or those repeated to his treater) were insufficient to establish injury. The compensatory verdict should be set aside because it was either the product of bias or prejudice or had no rational connection to the evidence.

However, if this Court should determine that, despite the lack of supporting evidence, some compensatory damages verdict is warranted, it should, at a minimum, grant a remittitur of the damages verdict. As the Seventh Circuit has admonished, judges and juries must not be casual with other people's money. Avita v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219 (7th Cir. 1995).

## III. DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON THE EXCESSIVE FORCE AND FALSE ARREST CLAIMS BECAUSE THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Under Rule 59(a) a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P 59. The rule has been interpreted to grant a new trial if "the jury's verdict was against the manifest weight of the evidence." FMS, Inc. V. Volvo Const. Equipment North America, Inc.,2007 WL 844899, citing King v. Harrington, 447 F.3d 531, 534 (7th Cir.2006). The decision whether to grant a motion for a new trial is within the trial court's discretion. Id. citing, Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems, 428 F.3d 706, 716 (7th Cir.2005).

In this case, as explained above, the manifest weight of the evidence does not support the

verdict in this case. Plaintiff was caught in multiple lies. He presented no physical evidence to support his claims. He presented no medical records or photos. He presented no eye witnesses, even though his cousin was supposedly with him at the time of his arrest, and the witnesses he did present offered nothing to bolster his assertion that he suffered emotionally or mentally.

## **CONCLUSION**

WHEREFORE, defendants respectfully requests that this Honorable Court enter judgment in their favor as a matter of law, or in the alternative, grant defendants a new trial on the excessive force and false arrest claim, vacate the compensatory and punitive damages award, or in the alternative, grant a remittitur of the punitive and compensatory damages and that enforcement of the previously entered judgments in this case be stayed pending resolution of all post trial matters.

Respectfully submitted,

/s/ Avi T Kamionski

30 North LaSalle Street                    AVI T. KAMIONSKI
Suite 1400                                 Attorney for Defendants
Chicago, Illinois 60602
(312) 744-0747
Atty. No. 06283191