IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE REDMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 3611 |
| | ) |
| DANIEL GOOSHERST, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for judgment as a matter of law. This matter is also before the court on Defendants' motions in the alternative for a new trial, or a vacation of the compensatory and punitive damages award, or for the entry of a remittitur. For the reasons stated below, we deny all of the above motions.

## BACKGROUND

Plaintiff Andre Redmond ("Redmond") alleges in his second amended complaint that on May 8, 2004, he was returning to his car and was approached by the individual Defendants, Officers Daniel Goosherst ("Goosherst"), Louis Szubert ("Szubert"), and Jeffery Chevalier ("Chevalier")(collectively referred to as

1

"Defendant Officers"). According to Redmond, he asked if there was a problem, and the Defendant Officers allegedly told him to "shut up" and put his hands on his car. (SA Compl. Par. 12-13). The officers then allegedly removed Redmond's car keys from his pocket and searched his car. Redmond contends that the officers failed to find anything in the car that showed that Redmond violated any law. Redmond allegedly asked the officers if he could go and without provocation the officers slammed him against the car and told him, "[t]hat's it, you're going to jail." (SA Compl. Par. 24). The officers allegedly arrested Redmond and refused Redmond's request to lock up his car before leaving the scene. The officers also allegedly left the windows of the car open and did not activate the car alarm. While the officers drove Redmond to the police station, they allegedly told him that they hoped someone would steal his car, and the officers used racial slurs when referring to Redmond. Redmond was allegedly charged with drinking on a public way. Redmond contends that he eventually learned that his car was stolen while he was at the police station. According to Redmond, his car was ultimately found in Indiana, but it had been damaged by the thief. Redmond further contends that he appeared in court for his criminal case, but none of the Defendant Officers appeared in court, and the case was dismissed. Redmond included in his second amended complaint a false arrest/false imprisonment claim brought pursuant to 42 U.S.C. § 1983 ("Section 1983")(Count I), a Section 1983 Fourth Amendment claim based upon an illegal search of Redmond's person (Count II), a Section 1983 Fourth Amendment claim based upon an illegal search of Redmond's car (Count III), a Section 1983 excessive

force claim (Count IV), a Section 1983 due process claim (Count V), a Section 1983 *Monell* claim (Count VI), and an indemnification claim (Count VII).

A jury trial was conducted and during the trial we granted Redmond's oral motion to voluntarily dismiss the excessive force claims brought against Szubert and Chevalier, and the illegal search of Redmond's vehicle claims brought against Goosherst and Chevalier. On March 4, 2008, the jury returned a verdict in favor of Redmond and against Goosherst, Szubert, and Chevalier on the false arrest claim. The jury also returned a verdict in favor of Szubert and against Redmond on the illegal search of vehicle claim. The jury also returned a verdict in favor of Redmond and against Goosherst on the excessive force claim.

The jury awarded compensatory damages in the amount of $7,500.00 in favor of Redmond and against Goosherst, Szubert, and Chevalier. The jury also awarded punitive damages in the amount of $20,000.00 in favor of Redmond and against Goosherst. The jury also awarded punitive damages in the amount of $8,000.00 in favor of Redmond and against Chevalier. Finally, the jury awarded punitive damages in the amount of $5,000.00 in favor of Redmond and against Szubert. Defendants now move for a judgment as a matter of law in their favor pursuant to Federal Rule of Civil Procedure 50(b) ("Rule 50(b)"). In the alternative, Defendants request that the court vacate the compensatory and punitive damages awards and afford Defendants a new trial, or enter a remittitur.

**LEGAL STANDARD**

Pursuant to Rule 50(b), after a jury verdict, the losing party can renew a motion for judgment as a matter of law. Fed. R. Civ. P. 50(a)(b). If the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may. . . allow judgment on the verdict, if the jury returned a verdict; . . . order a new trial; or . . . direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). In reviewing the jury's verdict, the court should consider "'whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed.'" *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 449 (7th Cir. 2001)(quoting *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 606 (7th Cir. 2000)). The court should reverse the jury verdict only if the court concludes that "no rational juror could have found for the prevailing party." 272 F.3d at 449.

Pursuant to Rule 59(a), after a jury returns its verdict, the losing party can move for a new trial. Fed. R. Civ. P. 59(a). A court should only grant a motion for a new trial "'if the verdict is against the manifest weight of the evidence.'" *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003)(quoting *Lowe v. Consol. Freightways of Del., Inc.*, 177 F.3d 640, 641 (7th Cir. 1999)).

**DISCUSSION**

I. Punitive Damages Award

Defendants argue that the punitive damages award should be vacated, arguing that there was insufficient evidence to support such an award, the jury's damages verdict reflects bias, passion, or prejudice, and the award would constitute a windfall for Redmond.

A. Amount of Awards and Evidence to Support Awards

Defendants contend that Redmond failed to present sufficient evidence to justify any punitive damages award against any of the Defendants. A jury can award punitive damages to a plaintiff "to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996). A punitive damages award will violate the Due Process Clause "[o]nly when an award can fairly be categorized as 'grossly excessive' in relation to these interests [and thus] enter[s] the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *Id.*; *see also Holmes v. Elgin, Joliet & Eastern Ry. Co.*, 18 F.3d 1393, 1395-96 (7th Cir. 1994)(stating that a court can set aside a jury's damages award if the court "determine[s] that the award was 'monstrously excessive' or that the award has no rational connection to the evidence").

Defendants also argue that the punitive damages awards are grossly excessive. Although the "primary responsibility for deciding the appropriate amount[] of [punitive] damages rests with the jury," *EEOC v. AIC Security Investigations, Ltd.*,

55 F.3d 1276, 1287 (7th Cir. 1995), the Court has a duty to review the size of punitive awards. *See Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 432 (1994)(emphasizing the importance of judicial review in preventing unjust punitive awards). The Supreme Court has established three "guideposts" to assist courts in determining whether punitive damages are constitutionally excessive: (1) the "degree of reprehensibility" of the defendant's improper conduct; (2) the "disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award;" and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 575; *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)(reiterating *Gore*'s three guideposts). The Supreme Court has instructed courts to determine the reprehensibility of a defendant's conduct by considering whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 418 (citing *Gore*, 517 U.S. at 576-77). *See also Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 721 (7th Cir. 2004)(quoting *State Farm* for the proposition that "'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process'").

### 1. Punitive Damages Award Against Goosherst

Defendants argue that there is not sufficient evidence to support the $20,000 punitive damages award against Goosherst. Defendants contend that although Redmond claimed that Goosherst was a main player in the incident in question, Redmond did not call Goosherst in his case in chief. Defendants also state that when they called Goosherst to testify in his case in chief, Goosherst was not questioned by Redmond's counsel about allegedly slamming Redmond into a car. Defendants argue that Redmond's counsel did not rebut Goosherst's testimony, and the majority of what the jury heard about Goosherst was in Redmond's counsel's closing argument. Redmond, however, was not required under the law to call Goosherst as a witness or to cross examine him on certain issues in order to obtain punitive damages. Defendants also contend that Redmond did not present any evidence that showed that he suffered a physical injury or that he sough medical treatment for an injury. However, such matters involve trial strategy and are left to the reasonable discretion of counsel. Redmond was entitled to prove up his case in the manner that he decided was best. For example, although on cross examination, Redmond admitted that he did not tell other individuals he had been injured, Redmond also testified that after the incident he did not feel like talking to anyone and felt like keeping to himself. (Tr. 63-64). The jury could have believed Redmond's explanation.

Redmond did offer evidence to support his claims against Goosherst. Redmond testified that one of the three officers that arrested him picked him up by the back of his pants and collar and slammed him on the hood of a car. (Tr. 40). Redmond further testified that he hit his chin on the hood of the car and his teeth cracked together. (Tr. 40). Defendants do not contest that the officer that Redmond accused of slamming him on the car was Goosherst. The jury returned its verdict in favor of Redmond and against Goosherst on the excessive force claim. Redmond also testified that the three arresting officers were all acting together as part of the arrest, at one point huddling together. (Tr. 40). Redmond stated that one of the officers refused to turn the alarm on in his car and told Redmond that he hoped that the car was stolen. (Tr. 41). Redmond also claimed that he was arrested for drinking a beer in front of his sister's house, but that he was not drinking a beer or doing anything wrong. (Tr. 95). Redmond also claimed that while he was being driven to the police station one of the officers referred to him by a racial slur and asked him if he was going to get Jesse Jackson to represent him. (Tr. 42). Redmond testified that he was subjected to Defendant Officers' misconduct despite the fact that Redmond did nothing wrong. (Tr. 95). Thus, the jury could have believed Redmond's testimony and based on such a first hand recitation of what happened the jury could have awarded punitive damages against Goosherst.

In regards to the punitive damages amount, it was around three times the compensatory damages award for all three Defendant Officers. Redmond did present

evidence at trial showing that Goosherst intentionally slammed Redmond onto a car, and took part in the arrest that included racial slurs and other misconduct. Such conduct is sufficiently reprehensible to support the jury's punitive damages award against Goosherst. Defendants have also not shown that the punitive damages award amount is not comparable to awards in similar cases. Defendants have not shown that a rational juror could not have made the punitive damages award against Goosherst. Therefore, we deny Defendant's request to vacate the punitive damages award entered against Goosherst.

### 2. Punitive Damages Award Against Chevalier

Defendants argue that there is not sufficient evidence to support the $8,000 punitive damages award against Chevalier. Defendants contend that Redmond presented no evidence in his case in chief that showed that Chevalier committed any constitutional violations. Defendants also claim that at no time was Chevalier identified by Redmond as an officer who used excessive force against him. However, as is explained above, Redmond was entitled to prove up his case in the manner that he decided was best. There was no requirement that he present any one particular piece of evidence in order to prevail. Redmond testified that the officers acted in concert to wrongfully arrest him. While it is true that Redmond did not testify that Chevalier used excessive force and no verdict was returned against Chevalier on the excessive force claim, the jury was able to award punitive damages

against Chevalier based upon the false arrest claim. Thus, Defendants have not shown that the jury could not have awarded punitive damages against Chevalier. In addition, Redmond did provide evidence indicating reprehensible conduct on the part of Chevalier at trial. Redmond testified that Chevalier took part in the false arrest. Although Chevalier did not take part in the excessive force, the jury's punitive damages award against Chevalier was less than half of the award for Goosherst who the jury concluded had engaged in the excessive force. The award was approximately equal to the compensatory damages awarded against all three Defendant Officers. Defendants have also not shown that the punitive damages award amount is not comparable to awards in similar cases. Defendants have not shown that no rational juror could have made the punitive damages award against Chevalier. Therefore, we deny Defendants' request to vacate the punitive damages award entered against Chevalier.

### 3. Punitive Damages Award Against Szubert

Defendants argue that there is not sufficient evidence to support the $5,000 punitive damages award against Szubert. Defendants argue that there was no evidence presented that Szubert arrested Redmond. However, Redmond testified that Szubert took part in the arrest and that the officers huddled together at one point. (Tr. 40). There was also evidence presented that showed that although Szubert was not physically next to Redmond at the time of the arrest, Szubert was acting as

security and would have taken action if, for example, Redmond attempted to flee from the other two officers. Thus, there was evidence that showed that Szubert took part in the arrest, which involved reprehensible conduct. Although the evidence showed that Szubert did not take part in the excessive force and played a more limited role in the arrest, the jury's award against Szubert, which was the lowest of the three awards against Defendant Officers, appeared to take those factors into consideration. Defendants have also not shown that the punitive damages award amount is not comparable to awards in similar cases. Defendants have not shown that a rational juror could not have made the punitive damages award against Szubert. The punitive damages award against Szubert is less than the compensatory damages award against the three Defendant Officers. Therefore, based on the above, Defendants have not shown that the punitive damages award is unsupported by evidence or is grossly excessive.

    B. Bias, Passion, or Prejudice

Defendants argue that the punitive damages awards should be vacated, arguing that the awards reflect bias, passion, or prejudice by the jury. Defendants argue that Redmond failed to present any physical evidence to support his case, and Defendants point out that Redmond did not call his cousin to testify. Defendants argue, for example, that Redmond did not offer as evidence any photographs of physical injuries that Redmond suffered. However, as is explained above, Redmond was

entitled to present his case as he determined was best.  Redmond did present his own eyewitness testimony.  The jury could have concluded that Redmond was telling the truth and could have concluded that the Defendant Officers were not telling the truth.  Such conclusions would not necessarily be the result of an improper bias, passion, or prejudice by the jury.

Defendants also point to seven instances at trial where Redmond's counsel attempted to inflame the jury.  Defendants contend that the only explanation for the punitive damages verdict in the absence of any evidence to support the punitive damages verdict is that the jury was inflamed by Redmond's counsel.  This argument is flawed at the outset, since as explained above, there was evidence that the jury could have considered the acts of physical and oral abuse by Defendant Officers to support punitive damages awards.  In addition, Defendants have not shown that the conduct of Redmond's counsel caused the jury to award punitive damages because of bias, passion, or prejudice.  Defendants, in fact, failed to raise any objection to the instances that Defendants now highlight and Defendants did not move for a mistrial despite their contention now that Redmond's counsel engaged in such alleged inappropriate conduct at trial.  Defendants claim that Redmond's counsel improperly referred to Chicago Police Officers as a whole rather than focusing on the three Defendant Officers and alluded indirectly to misconduct by police officers that was in the news.  However, references to police officers in general is not sufficient to vacate the punitive damages award.  Also, Defendants have failed to show that

12

Redmond's counsel conveyed to the jury that they should consider other police misconduct that was in the news.

Defendants also contend that Redmond's counsel attempted to seek jury nullification by arguing that Defendant Officers should have given Redmond a pass since, according to Redmond's counsel, people in the Wrigleyville neighborhood after a Cubs game drink in the public way and are not arrested. Such an argument is not necessarily a plea for the jury to overlook the law as Defendants contend. The argument attempts to convey that Chicago Police Officers routinely viewed persons drinking in the public way and did not arrest them, but in Redmond's case they decided to arrest him. Such facts could be used by Redmond to support his theory that the Defendant Officers lied about the reason for arresting Redmond. How persuasive such evidence was for Redmond's case was for the jury to assess. In addition, Redmond's trial strategy was not to plead for mercy despite his guilt. Rather, Redmond contended that the Defendant Officers lied about Redmond drinking a beer in front of his sister's residence.

Defendants also contend that the reference by Redmond's counsel to the Wrigleyville neighborhood, which Defendants contend is predominantly a Caucasian community, and the reference to the south side, which Defendants contend is an "African American Community," (Mot. 8), suggested that Defendant Officers arrested Redmond because of his race. However, as explained above, there was a reasonable explanation for the argument, and it was not presented in a way to suggest

13

racial bias by Defendant Officers.

Defendants also contend that Redmond's counsel's reference to a racial slur that Redmond claims Defendant Officers used and Redmond's counsel's reference to Jesse Jackson were intended to cause bias and prejudice against Defendant Officers and sympathy for Redmond. However, as indicated above, such facts were premised on Redmond's testimony as to his first hand account of what Defendant Officers said to him at the time of the arrest. Defendants have not shown that the references to the matters resulted in bias, passion, or prejudice that would warrant vacating the punitive damages awards.

### C. Financial Windfall

Defendants argue that the punitive damages awards should be reduced because Redmond had no "out-of-pocket costs whatsoever" and thus is receiving a financial windfall. (Mot. 10). However, the jury in this case could have believed Redmond's testimony and awarded punitive damages based upon what the jury believed was a false arrest, involving excessive force accompanied with racial slurs and willful and malicious conduct. Defendants cite no precedent that requires a plaintiff to show out of pocket expenses on the part of a plaintiff to recover punitive damages.

Defendants cite *Allahar v. Zahora*, 59 F.3d 693 (7th Cir. 1995), in which the Seventh Circuit affirmed a district court's reduction of a punitive damages award. *Id.* at 697. In *Allahar* the plaintiffs entered into a contract with the defendant to

purchase a house and the defendant decided to refuse to complete the sale, because the neighbors did not want the defendant to sell to African American buyers. *Id.* at 694. In *Allahar*, the district court concluded that there was not sufficient evidence of malicious conduct on the part of the defendant. *Id.* at 697. However, in the instant action, the jury could have concluded based on Redmond's testimony that Defendant Officers engaged in malicious conduct. Also, the district court in *Allahar* considered the fact that before the trial, the defendant had already completed the sale to the plaintiff without a court mandate requiring him to do so. *Id.* at 697. In contrast, in the instant action, Defendant Officers did not make any amends before trial. Instead, they stood by their contentions that Redmond was lying about the Defendant Officers' alleged misconduct. The jury awarded punitive damages based on the wrongful conduct of Defendant Officers that included racial slurs. We cannot say as a matter of law that the monetary amount accorded to such misconduct is excessive. Thus, Defendants have not shown that the punitive damages award in this case provides Redmond with an improper financial windfall. Therefore, we deny Defendants' request to vacate or reduce the punitive damages awards.

II. Compensatory Damages

Defendants argue that the compensatory damages award should be set aside because the award was based on bias, passion, or prejudice and because it is not supported by the evidence. Defendants also argue that at the very least the court

15

should reduce the amount of compensatory damages.

### A. Bias, Passion, or Prejudice

As discussed above in regard to the punitive damages award, Defendants have failed to show that any of the damages awards by the jury should be reduced or stricken as a matter of law due to bias, passion, or prejudice. Defendants argue that the jury must have based the compensatory damages award on an improper basis because for example, Redmond did not call certain witnesses at trial. However, Redmond could present his case as he saw fit and Redmond presented evidence to support the compensatory damages award. The jury could have, based on the circumstances in this case, awarded Redmond the $7,500 for emotional harm the jury believed that Redmond suffered relating to Defendant Officers' actions.

### B. Weight of the Evidence

Defendants argue that there is insufficient evidence to support the $7,500 compensatory damages award. Defendants, however, do nothing more than criticize the way Redmond presented his case and attempt to second guess the jury in its fact finding determinations. Redmond's testimony concerning the alleged misconduct of Defendant Officers was sufficient to provide a basis for the compensatory damages award. Therefore, we deny the request to vacate the compensatory damages award.

### C. Setting Aside of Compensatory Damages Award

Defendants argue that the compensatory damages verdict should be set aside because Redmond has not shown that he suffered any actual harm. Defendants contend that the verdict was based upon passion and prejudice and that there was no medical evidence or physical evidence to show that Redmond had suffered an injury. Redmond acknowledges that he did not present medical experts at trial to show that Redmond suffered emotional distress. Redmond admitted at trial that he did not see a doctor, counselor, or social worker or clergyman for his alleged emotional distress. (Tr. 81). Redmond also acknowledged that he had been arrested on prior occasions. (Tr. 85). However, Redmond presented evidence for example, from which the jury could have concluded that he was told to shut up by Defendants, called racial epithets, and subjected to physical violence. The jury could have believed Redmond's first-hand depiction of the events and believed that he suffered severe emotional distress. The jury could have concluded that although Redmond had been arrested previously, and may have been accustomed to the events involved in a typical arrest, Redmond was still shocked and distressed when he was subjected to the misconduct of Defendant Officers. Defendants did not show that Redmond was subjected to similar misconduct during prior arrests.

Redmond also correctly points out that there is no requirement that a plaintiff present physical evidence, expert testimony, or other medical evidence to receive compensatory damages for emotional distress. *See, e.g., Tullis v. Townley*

17

*Engineering & Mfg. Co., Inc.*, 243 F.3d 1058, 1066-67 (7th Cir. 2001). Redmond specifically testified that he had suffered emotional distress. He claimed that the incident "messed up [his] whole life." (Tr. 91). He stated that he was severely traumatized by the incident to the extent that he still goes into a panic attack whenever he sees a police officer. (Tr. 91). He also testified that he felt violated by Defendant Officers' misconduct and felt "bad" and "upset." (Tr. 91-93). He also stated that he was "shock[ed]" by the racial epithets used in his presence. (Tr. 94). Redmond also testified that the incident was "like a nightmare." (Tr. 95). The jury was able to weigh the credibility of such evidence and conclude that Redmond was owed damages for emotional distress. As indicated above, Defendants have not shown that the verdict was the result of bias or passion. Defendants have not shown the compensatory damages award to be excessive and we deny the request to reduce the damages amount.

III. Motion for a New Trial

Defendants argue that the verdict is contrary to the manifest weight of the evidence and that the Defendants should be accorded a new trial. However, Defendants' argument is based upon Defendants' criticism of the way that Redmond chose to present his case and on the jury's fact finding decisions. As explained above, Redmond could present his case as he saw fit and it was the jury's role to evaluate the credibility of the testimony at trial. Defendants have failed to point to

any evidence that warrants granting Defendants a new trial. Therefore, we deny the motion for a new trial.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion for judgment as a matter of law. We also deny Defendants' motions in the alternative for a new trial, or a vacation of the compensatory and punitive damages award or for the entry of a remittitur.

                                    _____
                                    Samuel Der-Yeghiayan
                                    United States District Court Judge

Dated:   August 12, 2008